Ruffin, C. J.
 

 The question in this case is of much consequence in this country, and, particularly, to the owners of slaves. Though formerly discussed to. some ex*
 
 *447
 
 tent, we had supposed it to have been long at rest in the minds of the profession, and that in a way, opposite to the opinion given to the jury on this trial.
 

 The general principle is, that if one command or pro* cure a trespass to be committed, he is answerable for it, as if done by his own hand. So, likewise is he, if a trespass be committed without his previous procurement, but for his benefit, and he afterwards assent to it, and take benefit by it. With those exceptions, we believe the law does not hold one person answerable for the wrongs of another person. It would be most dangerous and unreasonable, if it did, as it is impossible for society to subsist without some persons being in the service of others, and it would put employers entirely in the power of those, who have, often, no good will to them, to ruin them. It is admitted in the instructions, that such is the rule of law, when the trespass is committed by a servant who is free : which is, certainly true, and has been so deemed ever since the case of
 
 McManus and Crickett,
 
 1 East. 106, though the servant, at the time of the wanton act of trespass, was engaged in the master’s business. But it is supposed when the servant is a slave, the law should be different, upon the ground of the irresponsibility of such a servant for his trespasses. For the distinction, no authority has been discovered after diligent research by the counsel for the plaintiff, and we suppose there is none. That
 
 per se
 
 furnishes a strong argument against the action, as slavery prevails so extensively in this country, and there can be no doubt that many recoveries would have been sought and made, if the law were as assumed for the plaintiff. But we think the distinction is not supported more by sound principle than by precedent. The ground of it is, that a free servant is responsible for his trespasses, and a slave is not, and therefore that the master of the former is not to be held responsible, while the owner of the latter is. Now, there are two kinds of responsibility for tresspasses?
 
 *448
 
 that is,
 
 criminaliter and civiliter.
 
 The latter alone is that referred to, as furnishing the reason for the distinction. The whole force of the argument consists in the necessity for responsibility, on some one, for lawless acts, in order to prevent their perpetration ; and the inference is thence drawn, that the responsibility must be thown on the master, as there is none on the slave. But it must be perceived upon further consideration, that the argument fails, since the slave, like the free servant, is subject criminaliter, when the act, which is injurious to another, amounts to a public offence, as is the case in respect to trespasses. Moreover, for the very reason, that slaves are not liable for damages, our law renders them summarily punishable corporally in many instances, in which free persons are not indictable. In restraint of wrongs by slaves, therefore, there is that most powerful consideration of responsibility personally, even to a greater degree than in the instance of free persons, in respect, at least, of minor offences, and in an equal degree in respect to all others ; and that is, surely, the most effectual protection both of the public and individuals from injury. But passing by that and looking to the responsibility of the party alone for the private injury, it seems very manifest, that the difference in that respect between an hired and an enslaved servant ought not to have the effect attributed to it. For, in general, the pecuniary responsibility of menials, though so by contract, is but nominal, and, in cases of aggravated injuries, it is altogether inadequate. The rule at common law could not have been founded on such a responsibility ; for it would most commonly be merely illusory. The true ground of the doctrine of the irresponsibility of the master, for the trespasses of his servant, is that before adverted to; which is, that, for acts wanton or wilful of one person, another shall not be liable, though the former is the servant of the latter and engaged in his business at the time. For they are not acts done by the direction of the master»
 
 *449
 
 or with his assent, or in the due course of the servant’s employment. It was never argued on any other ground against the master in England, than the one, that the servant must or might be presumed to act by the master’s orders, if at the time he was engaged in his master’s employment. And that is the very point that was ruled in the negative in
 
 McManus
 
 &
 
 Crickett,
 
 when the servant was driving the defendant’s carriage, either after he had set him down, or when he was going for him. This same reason applies as directly and cogently to the question of a master’s liability for the trespass of his slave. It cannot turn upon the irresponsibility of the slave ; for that would extend equally to his acts, when he was not, as when he was engaged in the master’s business ; in the former of which cases, the instructions to the jury imply, that the master would not be liable.
 

 Indeed, the contrary could not be held, unless upon the ground as mentioned by Chief Justice Tayloh in
 
 Campbell
 
 v.
 
 Staiert,
 
 2 Mur. 389, that one is bound to keep up his slaves, as he is his beasts, to prevent their going on the premises of another: a doctrine as abhorrent to the feelings, as it is contrary to the usages of the countryIf a negro leaves his master’s plantation without a permit, he may he taken up and punished ; but the owner is not compelled either to keep him always in his presence, or in close custody, in order to avoid being liable foi- his acts. This was distinctly held in the case just cited ; and, although it is not so stated in the report, that case was like the present, according to my recollection, in nearly all its circumstances, and the decision was intended and considered to be upon the broad principle, that the master was not liable for the trespass of his slave, of which he was ignorant and to which he did not subsequently agree. Indeed, Judge Daniel expressly puts the case on the point, that, although the slave was. in his master’s employment, the master was not liable, because the servant wilfully
 
 *450
 
 committed the act, that is, without the direction of the master. That is the true criterion of the master’s responsibility; whether he was, or was not, the cause of the trespass, by expressly ordering it, or subsequently sanctioning it; and, not, whether the person injured can or cannot have an action against the servant. If it turned on the latter ground, the owner would be liable although he were present forbidding the servant and doing all he could to prevent him from doing the wrong. In fine, it would bind the master to answer in damages for all the acts of a bad negro, upon the presumption of an authority to commit them ; a presumption, which, as it seems to us, cannot be drawn from the relation of master and servant, in reference to one kind of servant, more than to another. It is the misfortune of one. who is injured in his person ' or property by another, that he cannot obtain adequate pecuniary satisfaction ; but the misfortune is no greater, when the wrong doer is a slave, than when he is any one else, who has no property. That he is not able in either case to have such redress against the perpetrator of the wrong, affords no reason, why he should recover from one who is as innocent as himself.
 

 Pee Curiam. Judgment reversed and
 
 venire de novo.